UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **PATRICIA BUCHANAN,** | |
| **Plaintiff,** | |
| **vs.** | **Civil Action No. 1:16-cv-04385-ODE-AJB** |
| **DELTA AIRLINES, INC.,** | |
| **Defendant.** | |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CAUSE OF ACTION

### I.   INTRODUCTION

Plaintiff Patricia Buchanan ("Plaintiff" or "Buchanan") was employed as a Flight Attendant by Defendant Delta Air Lines, Inc. ("Delta"). In February 2016, she was suspended from her employment for conduct that she does not address in her Complaint, and she was shortly thereafter terminated for that conduct. She asserts three purported legal claims in her Complaint, and all of them fail to state a cause of action under Fed. R. Civ. P. 12(b)(6).

First, she alleges that Delta suspended/terminated her because of her age in violation of the Age Discrimination In Employment Act, 29 U.S.C. 621 *et. seq.*

("ADEA"). However, she does not allege facts that could plausibly support such a claim.

Second, she alleges that she was suspended/terminated in retaliation for allegedly complaining about age discrimination in violation of the ADEA. However, she alleges that she complained about age discrimination only after she was already suspended for the conduct that led to her termination. Thus, she asserts no facts that could plausibly support the causation prong of a retaliation claim – and instead asserts facts that establish that such causation is not plausible.

Third, she challenges her suspension/termination on a theory of breach of contract/promise, but any such claim fails as a matter of law under Georgia's well-settled employment at-will doctrine barring any such claims.

Accordingly, Delta respectfully requests that the Court dismiss Plaintiff's Complain with prejudice.[1]

## II.   ALLEGATIONS IN PLAINTIFF'S COMPLAINT[2]

---

[1] Plaintiff is represented by two separate law firms and thus there is no basis to dismiss this suit without prejudice for leave to file an amended complaint.

[2] While the factual section of Plaintiff's Complaint is 94 numbered paragraphs, a vast majority of those paragraphs are not factual allegations but purported conclusory legal arguments, even citing case law. Delta addresses in this section of its brief the *facts* alleged in Plaintiff's Complaint and addresses her purported legal claims and arguments in the following Argument section.

2

Plaintiff alleges that she was hired as a Flight Attendant by Northwest Airlines ("Northwest") in 1986 and became employed as a Delta Flight Attendant when Northwest merged into Delta in 2008.  Complaint, ¶¶ 15, 17.

She alleges that, as a Delta employee, she was permitted to designate a "travel companion" amongst her friends, relatives, or acquaintances, who could travel for free or at reduced rates on Delta flight.  Complaint, ¶ 56.  She alleges that, on or about February 9, 2016, she was required to participate in a conference call during which she was questioned by Delta regarding her travel companion's use of Plaintiff's flight privileges.  Complaint, ¶ 20.  She alleges it became clear to her during this conversation that Delta was conducting a disciplinary investigation of her regarding this subject and that she was asked to provide a written statement.  Complaint, ¶¶ 22, 23.[3]  She alleges that she was instructed that she was not to divulge to anyone what had been discussed in the call and that she was told to put such a "confidentiality command" into a handwritten statement to be given to Delta.  Complaint, ¶¶ 24, 25.[4]

---

[3] Plaintiff's Complaint does not identify her travel companion, the substance of this call regarding her travel companion, or the assertions in the meeting that caused her to conclude she was being investigated for violations of the travel companion policy.

[4] As Plaintiff's Complaint does not allege facts regarding the substance of the call, it does not identify what it was that she was to keep confidential.  The most plausible conclusion from her alleged facts is that Delta was investigating possible

Plaintiff alleges that, on February 17, 2016, Delta informed her that she was suspended from her job without pay and that "[a]ll rights related to her employment were unilaterally suspended" by Delta.  Complaint, ¶ 30.

Plaintiff alleges that, *after* she was suspended and lost all rights related to her employment, on February 22, 2016, she sent an email to her manager, Larry Colon ("Colon"), stating, "[T]he treatment I am receiving from Delta Air Lines can only lead me to feelings of discrimination due to my retirement age with 30 years of service . . . I am also prepared to vigorously take legal action in order to reinstate my employment and character, if needed."  Complaint, ¶ 32.  She alleges that Colon was directly involved in the adverse actions against her.  Complaint, ¶ 33.

This February 22, 2016 email to Colon that Plaintiff identifies as her ADEA protected conduct establishes that she knew at that time the issues that Delta had investigated and why she was suspended.   Exhibit "A."[5]   While she wrote that she

violations of the travel companion policy and logically and properly did not want her to interfere with that investigation by communicating about it to her travel companion or any other potential witnesses.

[5] As Plaintiff referred to this email as her protected conduct in her Complaint, and indeed, quoted from it, Delta can attach the email to this motion without converting this motion to a motion for summary judgment.  Kynes v. PNC Mort., 2013 U.S. Dist. LEXIS 125309 ** 9-13 (N.D. Ga. July 25, 2013(Baverman, MJ), adopted, 2013 U.S. Dist.  LEXIS 125049 (N.D. Ga. Aug. 30, 2013)(and decisions cited therein).

had not been given a "definitive reason" for her suspension, she admitted that, both at the February 9 conference call and at her February 17, 2016 suspension meeting, she was asked if she had given her Delta password to her designated travel companion.   Exhibit "A."  She also revealed that she understood that she was suspended in connection with the nature of the travel undertaken by her designated travel companion using her travel privileges by arguing that, Delta's pass rules "do not state I must be aware of [it] each time [her travel companion] travels." Id.  She argues that her travel companion is "permitted unlimited travel" and that "the only way I am to know his exact itinerary is if I were to view 'travel history' on a daily basis." Id.

She stated in her February 22, 2016 email that, since her suspension, she had researched on the Internet and found there "numerous accounts of Delta employees who have received the same treatment." Exhibit "A."  She stated that "Delta has a pattern of suspension without pay with an indefinite time frame followed by termination or a separation from the company." Id.  She stated, "The only viable solution theses [sic] cases had in order to keep their employment intact was to take legal action."  She ended the email stating, that she is "prepared to vigorously take legal action" if she is terminated.   Id.

Thus, the email establishes that she was aware that she was likely to be terminated as a result of the conduct Delta concluded she had engaged in and that caused her suspension but that she wished to make an effort to delay or prevent that expected termination by making a purported claim of age discrimination. Exhibit "A."   Her Complaint does not allege that she received any response to this email nor does it contain any facts that would plausibly have caused any change in any course of action to be taken by Delta.

On February 29, 2016, she received a call instructing her to meet with Delta managers in Memphis, Tennessee.  Complaint, ¶¶ 34.  She makes no allegations about that meeting.  She alleges that, on March 1, 2016, she was terminated by letter.  She alleges that she was age 56 at the time.  Complaint, ¶ 14.  She alleges that she was told that, in lieu of termination or resignation, she could elect to retire. Complaint, ¶ 44.   She does not allege whether she chose to retire.   Plaintiff does not assert that her termination was purportedly for some reason different than the reason for her suspension.

After her termination, she filed an EEOC Charge.   Complaint, ¶ 10.  She alleges that, in responding to her EEOC Charge, Delta provided to the EEOC "false and/or deceptive evidence and argument" about why she was suspended/termination.  Complaint ¶ 51.  Thus, while she may claim to deny the

truth of Delta's asserted reason(s), she knows the reason(s) why Delta claims it

suspended/terminated her.   However, presumably because she (incorrectly for

reasons set forth below) believes it might allow her to avoid a motion to dismiss,

Plaintiff studiously avoids identifying such asserted reasons in her Complaint.[6]

Plaintiff does not allege that Delta provided a reason(s) for its

suspension/termination decision other than that it claimed that it believed that she

violated the travel policy as it related to her travel companion.

## III.  ARGUMENT AND CITATION OF AUTHORITY

### A.  Standards For Rule 12(b)(6) Motions

To avoid dismissal under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, "a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  Ogletree v. Necco, 2016 U.S.

Dist. LEXIS 165566 * 13 (N.D. Ga. Nov. 9, 2016)(Baverman, MJ), adopted, 2016

U.S. Dist. LEXIS 165564 (N.D. Ga. Nov. 30, 2016) (quoting Ashcroft v. Iqbal,

---

[6] She makes assertions that at least imply that she knows that Delta claims it suspended/terminated her for violation(s) of Delta's travel policy as it related to her travel companion.  See Complaint, ¶ 22 (denying she gave her Delta password to anyone); ¶¶ 54, 55 (alleging that any accusation by Delta that she violated that policy was false); ¶ 61 (denying that she violated that policy and that her travel companion also denied violating that policy); ¶ 86 (Delta did not consider suspending her travel privileges instead of suspending/terminating her alleged misconduct under the travel policy).

556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and <u>Bell Atl. Corp.</u> <u>v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

"Although the factual allegations of a complaint must generally be taken as true when ruling on a motion to dismiss, a court should not accept 'conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts.'" <u>Ogletree</u>, at * 13 (quoting <u>Oxford Asset Mgmt., Ltd. v. Jaharis</u>, 297 F.3d 1182, 1188 (11th Cir. 2002).  "While a complaint need not contain detailed factual allegations, mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Id</u>.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and are "not entitled to the assumption of truth." <u>Iqbal</u>, 556 U.S. at 678-79.  "Rather, plaintiffs are required to make factual allegations that are 'enough to raise a right to relief above the speculative level.'" <u>Ogletree</u>, at * 14 (quoting <u>Twombly</u>, 550 U.S. at 555).  "Complaints must 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" <u>Id</u>. (quoting <u>Fin. Sec. Assurance, Inc. v. Stephens, Inc.</u>, 500 F.3d 1276, 1282-83 (11th Cir. 2007)).  "The court also may dismiss a claim pursuant to Rule 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.  <u>Id</u>.

(quoting <u>Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993) .

## B.   Plaintiff's ADEA Discrimination Claim Should Be Dismissed.

In Count I, Plaintiff alleges that she was suspended/terminated by Delta because of her age in violation of the ADEA.  Complaint, ¶¶ 95-102.  "To establish a *prima facie* case for disparate treatment in an employment discrimination case, the plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job."  <u>Trask v. Sec'y, Dept. of Veteran Affairs</u>, 822. F.3d 1179, 1192 (11th Cir. 2016)(quoting <u>Burke-Fowler v. Orange Cty.</u>, 447 F.3d 1319, 1323 (11th Cir. 2006)).  "With respect to the third prong of the *prima facie* case, the plaintiffs and the employee they identify as a comparator must be similarly situated in all relevant respects.  <u>Id</u>.  "The comparator must be 'nearly identical' to the plaintiffs to prevent courts from second-guessing a reasonable decision by the employer."  <u>Id</u>.

Despite a 94-paragraph Complaint filed by a Plaintiff represented by two separate law firms, Plaintiff makes only two vague and conclusory allegations

aimed at asserting a plausible basis that she can meet the third prong, and these allegations fail to state a cause of action under the case law in this District.

First, Plaintiff alleges, "Younger flight attendants were not disciplined at all, let alone fired, under comparable circumstances."  Complaint, ¶ 40.  Second, Plaintiff alleges that, if Delta did conclude that Plaintiff engaged in misconduct, Delta "never considered a lesser discipline for plaintiff, such as suspending her travel privileges, as it had for younger flight attendants . . ."  Complaint, ¶ 86.  In the section of her Complaint listing the bases of her ADEA discrimination, she makes no allegations whatsoever regarding the third "nearly identical" prong.

For three independent reasons, Plaintiff's assertion that unspecified younger Flight Attendants were not disciplined under "comparable conditions" and that unspecified younger Flight Attendants have had their travel passes suspended for reasons not asserted fail to assert facts sufficient to support a plausible claim that there are more "nearly identical" younger Flight Attendants who were not terminated.

First, because she decided not to assert the reason(s) Delta articulated for its decision (which she claims are false but she chose not to identify), she does not allege what her "circumstances" were such that they cannot be factually alleged to be comparable to anyone else's circumstances.  Second, she fails to identify any

such "younger flight attendant."  Third, she alleges no facts that any such younger Flight Attendant engaged in conduct nearly identical to the conduct that Delta articulated as the reasons for its decision regarding Plaintiff.

These flaws are fatal under Rule 12(b)(6).   In Phillips v. City of Atlanta, 2016 U.S. Dist. LEXIS 132360 at * 40 (N.D. Ga. July 29, 2016)(Vineyard, M.J.), adopted 2016 U.S. Dist. LEXIS 131785 (N.D. Ga. Sept. 26, 2016), a complaint's conclusory allegation that three identified employees outside the plaintiff's protected group were similarly situated to plaintiff and did not suffer the same alleged adverse action was insufficient to survive a motion to dismiss because the plaintiff failed to assert any factual allegations to support the conclusory allegation that the named employees engaged in conduct nearly identical to plaintiff.

In Hale v. Mingledorff, 2014 U.S. Dist. LEXIS 171593 ** 35-37 (N.D. Ga. Nov. 7, 2014)(Fuller, MJ), adopted, 2014 U.S. Dist. LEXIS 171293 (N.D. Ga. Dec. 10, 2014), the plaintiff alleged in his complaint that he was terminated because of his race and that the employer treated similarly situated white employees more favorably.  Such an allegation was "conclusory and devoid of sufficient factual enhancement to plausibly suggest that Defendants intentionally discriminated against Plaintiff because of his race."  Id. at * 36.  The plaintiff had failed to allege "the other employees and the relevant decisionmakers," and "critically" the

plaintiff had not alleged facts to "show that other similarly situated white employees engaged in misconduct 'nearly identical.'" Id. "In the absence of such factual enhancement, Plaintiff's conclusory allegations are insufficient to state a claim of race discrimination." Id. at * 37.

Both Phillips and Hale cited numerous federal court decisions reaching the same holding on such conclusory allegations of similarly situated employees. See e.g. Uppal v. Hosp. Corp. of Am., 2012 U.S. App. LEXIS 11971 (11th Cir. June 13, 2012)(affirming district court's dismissal of discrimination claims where plaintiff only asserted that other similarly situated employees outside the plaintiff's protected class engaged in similar misconduct, but were not disciplined because the plaintiff did not support this conclusory allegation with any factual detail); Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1274 (11th Cir. 2004)(affirming dismissal of discrimination claim because plaintiff alleged no facts that would allow an inference that the employer treated those outside the plaintiff's protected class more favorably); Moultrie v. NYS Dep't of Corr. & Cmty. Supervision, 2015 U.S. LEXIS 60080 * 4 (S.D.N.Y. May 7, 2015)(plaintiff's alleged comparator was "too vague to meet the pleading standard to raise an inference of discrimination" as plaintiff "provide[d] no details about [the comparator's] conduct"); Scruggs v. Water Works Bd. Of the City of Birmingham, 2014 U.S. Dist. LEXIS 148837 * 5

(N.D. Ala. Oct. 20, 2014)(two comparators alleged by plaintiff insufficient to give rise to inference of discrimination as "the complaint alleges no facts to show that they [were] similarly situated to [plaintiff]"); <u>Thompson v. N.Y.C</u>., 2013 U.S. Dist. LEXIS 172993 * 8 (S.D.N.Y. Dec. 2013)(same).[7]

Apparently aware of no comparable younger Flight Attendants who were not terminated when Delta concluded that they had engaged in conduct nearly identical to Plaintiff, Plaintiff attempts to support an age discrimination claim with three other allegations that fall woefully short.

First, she alleges that, in her February 9, 2016 conference call, she was told not to disclose the substance of that call that she admits she had concluded was part of an investigation.  Complaint, ¶¶ 26-28.  Aside from the fact that she alleges no facts supporting a plausible claim that this confidentiality instruction was a material adverse action, she does not even attempt to assert that it had anything to do with her age or could violate the ADEA.  Plaintiff appears to recognize this

---

[7] "[A] plaintiff cannot rely on discovery to provide additional facts to support generalized allegations." <u>Ogletree</u>, at * 34; <u>Phillips</u>, at * 9 n. 21 (holding that the plaintiff's allegation regarding other unidentified white employees "to be named during the course of this action" was "conclusory and devoid of sufficient factual enhancement" to suggest a plausible claim and pointing out that "discovery is not intended to allow a plaintiff to go on a fishing expedition to see if the speculative complaint that she has filed has any basis in fact") (punctuation omitted).

flaw as she supports it not with ADEA law but with citations to cases under the National Labor Relations Act ("NLRA").  Complaint, ¶¶ 27, 28.  Aside from the fact that Plaintiff's assertions are not supported by those cited cases and that she cannot assert a private court action under the NLRA, she does not assert that she was even covered by the NLRA at Delta (she was not).

Second, Plaintiff alleges that, at the time of her termination, Delta "has been in the process of hiring dozens of new flight attendants under 40 years old." Complaint, ¶ 47.  Aside from the fact that this is not a failure-to-hire claim, the fact that Delta (like all airlines and other employers) hires some younger individuals for entry-level jobs like Flight Attendant says nothing about any allegation that it terminated any Flight Attendant – let alone Plaintiff – because of age.

Third and finally, Plaintiff alleges that Delta's publicly available web site ("Delta Net") included a headline stating, "Delta commits to hire young American workers for 'First Job.'"  Complaint, ¶ 45.  This allegation suffers the same flaws as the allegation in addressed in the prior paragraph – that an employer hires some younger individuals into entry-level positions at those individual's first jobs is immaterial to whether the employer terminated a particular employee because of their age instead of because of alleged misconduct.

Moreover, it is worth noting that Plaintiff misquoted the headline she claimed to have quoted and failed to reference the headline's context such that the assertion that the quote was admitted age discrimination is disingenuous.  The headline that Plaintiff references actually states, "Delta to hire _100_ young U.S. workers for 'First Job'" Attachment "B."[8]  (emphasis added)  Plaintiff apparently misquoted the headline to give the impression that Delta had announced it would only hire younger Americans instead of that it announced that it would hire only 100 of such individuals.  Moreover, the cited article makes it clear in the first sentence that this announcement is only about Delta's agreement to join a federal government initiative called "First Job" announced by President Obama in 2016. Attachment "B."  The initiative asks employers to identify jobs that can be filled by younger Americans with little or no prior experience and to partner with non-profits in an attempt to give them employment opportunities.  Id.  The article has a link to the White House web site's announcement of the program and its purpose to "reconnect disconnected youth to educational workforce pathways."  Id.   The

---

[8]As it is publicly available and cited – indeed, quoted (really, apparently strategically misquoted) – by Plaintiff in her Complaint, Delta can attach the article to this motion without converting this motion to a motion for summary judgment. Kynes v. PNC Mort., supra.

notion that each employer who joins this initiative has engaged in unlawful age discrimination is nothing short of preposterous.

Plaintiff's attempt to make such stretches to support an ADEA discrimination claim only highlights that she has not stated such a cause of action with any facts.

**C.    Buchanan's ADEA Retaliation Claim Should Be Dismissed.**

Plaintiff's only purported factual support for her ADEA retaliation claim is her assertions that (1) she was suspended and lost all of her "rights related to her employment" on February 17, 2016; (2) she sent her above-quoted writing to Colon on February 22, 2016; and (3) she was terminated on March 1, 2016.  She does not allege that Delta terminated her for any reason(s) other than the reason(s) it for which it claimed as the basis for suspending her on February 17, 2016. Complaint, ¶¶ 30, 105, 106, 108.

"In order to establish a *prima facie* case of retaliation, [a plaintiff] must show: (1) that [s]he engaged in a statutorily protected activity; (2) that [s]he suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse action."  Robinson v. Hoover Enters., LLC, 2004 LEXIS Dist. 25375 (Oct. 20, 2004) (citing Weeks v. Harden Mfg. Corp., 291 F.3d 1307 1311 (11th Cir. 2002)).

16

Delta here preserves the argument that Plaintiff's February 22, 2016 email to Colon did not amount to protected conduct under the ADEA.[9]  However, Delta submits that it is most clear that Plaintiff's Complaint fails to plausibly support the causation requirement for a retaliation claim and that it instead includes admissions rendering such causation to be implausible.

Importantly, in 2013, in addressing the causation requirement in a retaliation case, the U.S. Supreme Court held that a plaintiff alleging retaliation must meet a heightened burden that, "but for" her protected conduct, she would not have

_____

[9] First, Plaintiff's passing reference to discrimination based on her "retirement age" was not an act of opposition because she only stated she had "feelings" about retirement age discrimination and identified no basis for such "feelings."  Indeed, the purpose of that passing reference in the context of the email that nowhere else addresses age is logically viewed as an effort to throw out a potential legal claim to seek to fend off the termination she expected by threatening a retaliation and age discrimination suit if she were fired.  Second, discrimination against an employee on the basis of their years of service is not age discrimination under the ADEA and thus such an allegation is not protected conduct under the ADEA.   Hazen Paper Co. v. Biggins, 507 U.S. 604, 608-609 (1993)(years of service discrimination is not discrimination prohibited by ADEA); Frehner v. Clark County School Dist., 2014 U.S. Dist. LEXIS 44788 (D. Nev. March 31, 2014)(complaint of discrimination for years of service not ADEA protected conduct under Hazen Paper).  Third, Plaintiff's Complaint identifies no fact that would plausibly support a conclusion that she held an objective (based on the law cited herein) belief that she had been suspended because of her age as required for her allegation to be protected conduct.  Robinson v. Hoover Enters., LLC, 2004 U.S. Dist. LEXIS 25375 (N. D. Ga. Oct. 20, 2004).  Indeed, as shown above, even with two experienced law firms, she has not identified in her Complaint any *fact* supporting a claim that she was suspended/terminated under controlling law because of her age.

suffered the alleged adverse action.  University of Texas Southwestern Medical Center v. Nassar, 133 S.Ct. 2517, 2534 (2013).

That Plaintiff had already been suspended and had already lost "all rights related to her employment" for the unspecified asserted misconduct when she engaged in her alleged protected activity, and that the only event that occurred thereafter was that she was terminated for the same asserted reason, renders it implausible that she would not have been terminated "but for" her post-suspension communication.  Indeed, the Nassar Court held that one of the purposes of the heightened "but for" burden in retaliation claims is that, otherwise, an employee who has reason to suspect that she is soon to be terminated for alleged misconduct or poor performance may seek to forestall that lawful action by making an unfounded claim of discrimination and then, when the termination is imposed, claim retaliation for the complaint.  133 S.Ct. at 2532.  This is exactly the context and nature of Plaintiff's February 22, 2016 email to Colon.

Burgess v. Dollar Tree Stores, Inc., 2015 U.S. Dist. LEXIS 13014 (E.D. Pa. Feb. 4, 2015), is directly on point.  In Burgess, the employer suspended the plaintiff for an alleged violation of policy. The next day he submitted a complaint alleging that his suspension was discriminatory.  He was terminated six days later for the alleged violation.  Applying the "but for" standard in Nassar, the court held

that the plaintiff could not meet that standard on such a chronology because, his discrimination complaint the day after his suspension for misconduct "can scarcely be the but-for cause for termination six days later." Id. at ** 16-17.

Courts consistently reached this same conclusion even before Nassar.

For example, in Sicilia v. UPS, 2008 U.S. APP. LEXIS 11698 * *8-9 (11th Cir. May 30, 2008), the plaintiff alleged that he was removed from his position and that that he then filed an EEOC Charge alleging that the removal was discriminatory. The plaintiff alleged that, after filing his Charge, he was terminated off his suspension status. The court held that he could not meet the causal link requirement of a retaliation claim because he was already removed from active status when he filed his Charge. The court held that a fact of the temporal proximity between his Charge and his termination was not alone sufficient to meet the causation requirement.

Similarly, in Porter v. City of Lake Lotawana, 2009 U.S. Dist. LEXIS 27500 (W.D. Mo. March 31, 2009), the plaintiff was suspended during an investigation of possible misconduct. She then filed a complaint of discrimination and was then terminated for the alleged misconduct. Once again, the court held that the plaintiff could not meet her causation burden. The Court stated, "At the time plaintiff wrote the letter complaining of discrimination, she had already been suspended and was

being investigated for the very acts for which she was terminated.  Simply delivering a letter to a city attorney does not establish a causal connection between the complaints in the letter and a subsequent termination."  Id. at * 140-41.

The same is true for the claim here.  Plaintiff alleges that she was suspended and lost all rights related to her employment after what she considered to be a disciplinary investigation of her in connection with her Delta travel privileges and her travel companion.  She then sent an email showing she anticipated being terminated for that conduct, that made a passing reference to "retirement age" discrimination that she now claims is protected conduct.  She was then terminated as she expected before her email, and there is no assertion or factual basis for an assertion that she was terminated for any reason other than for the misconduct that Delta relied upon for suspending her.  The notion that she would not have been terminated for conduct for which she had been suspended because she sent an email anticipating termination and in passing alleging "retirement age" discrimination renders a "but for" causation to be (at best) implausible under Twombly and Iqbal.  Accordingly, Plaintiff's ADEA retaliation claim is properly dismissed.

**D.  Buchanan's Breach Of Contract Should Be Dismissed.**

In Count III, Plaintiff purports to allege a claim of "Breach of Contract, Implied Contract, and Quasi-Contract."  Complaint, Count III, p. 21.  Plaintiff alleges that, at certain times while she employed by Delta (dates in 2010, 2013, and 2014), she was promised the use of flight benefits in Delta policies and communications to employees, which she alleges was a form of compensation. Complaint, ¶¶ 117.  She alleges that she relied on this promise to her detriment and that Delta cannot renege on that promise.  Complaint, ¶ 119.  She alleges that she relied on alleged representations that she had flight privileges at Delta by staying employed at Delta and not departing Delta.  Complaint, ¶¶ 64, 70.

What is notably absent from Plaintiff's lengthy and verbose Complaint is any allegation explaining how she believes Delta breached any alleged contract. This absence again appears to be strategic rather than an oversight.

Plaintiff does not allege that at any time while she was an active Flight Attendant at Delta that she was ever denied her flight privileges.  Thus, she does not allege that Delta breached any contract by not providing her flight privileges during her employment.[10]  Thus, her contention that her flight privileges amount to

---

[10] Such a claim would have a number of fatal flaws, including that she has not alleged facts that Delta has a contractual obligation to provide travel privileges to any of its Flight Attendants – let alone Plaintiff.  However, it is unnecessary to address all those flaws because Plaintiff makes no factual allegation that she was denied travel privileges.

compensation to her (and she notably does not contend that she paid income tax based on this alleged "compensation") is immaterial as she asserts no claim or facts to support a claim that she was ever denied such "compensation."[11]

Instead, while Plaintiff appears to seek to strategically evade asserting any theory of a breach of contract or promise, it is clear that she is complaining about her termination and seeking to premise a breach of contract or promissory estoppel claim on her termination – in essence seeking to assert a wrongful termination claim under Georgia law.  She apparently is contending that she was terminated for an unspecified violation of Delta's travel pass policy, that she denies that she engaged in that violation and that, because she contends that Delta misapplied that violation term or some other term of its travel pass policy, she can state a cause of action for breach of contract/promise to challenge her termination.  Once again, the evasive nature of the allegations related to this claim at least suggests that she realizes that such a theory is nothing but a frequently rejected effort to circumvent Georgia's long-standing and black-letter employment at-will doctrine.

It is well settled that an employee such as Plaintiff who was employed for an indefinite term can be terminated for any reason and at any time.  Balmer v. Elan

_____

[11] Thus, the case cited by Plaintiff in her Complaint, Fletcher v. Amax, Inc., 160 Ga. App. 692 (1981), is inapplicable as that case involved an employee claiming a contractual right to a severance payment that he claimed was not paid to him.

Corp. 278 Ga. 227 (2004)(affirming grant of motion to dismiss); Barker v. Ctc

Sales Corp., 199 Ga. App. 742 (1991); Garmom v. Health Group of Atlanta, 193

Ga. App. 587 (1987).  "Any promises upon which [the plaintiff] may rely to show

misrepresentation are unenforceable because [their] underlying employment

contract, being terminable at will, was unenforceable."  Balmer, at 230.  Thus, the

terms of an employer policy (such as Delta's travel pass policy) "cannot be relied

upon to transfer an at-will employee into a contract employee."  Garmon, at 587.

Similarly, an at-will employee cannot seek to evade this doctrine with a claim of

promissory estoppel based on an alleged promise from the employer than she

claims she relied upon.  Barker.

Putting her claim in its best light, Plaintiff is at most claiming that she relied

upon the pass policy's permission for her to have a travel companion and relied on

her travel companion to abide by the policy and contends that he or she did so and

yet she was terminated for alleged violations of that policy.  That is not a cause of

action in Georgia.  It is simply an effort to evade the law.  Accordingly, this final

claim also fails to state a cause of action.

### III.   CONCLUSION

For the reasons set forth herein, Delta respectfully requests that this case be

dismissed.

Respectfully submitted,


s/Thomas J. Munger
Georgia Bar No. 529609

MUNGER & STONE, LLP
999 Peachtree Street, N.E.
Suite 2850
Atlanta, Georgia 30309
Telephone: (404) 815-0829
Facsimile: (404) 815-4687
E-mail:  tom.munger@mungerandstone.com

Attorneys for Defendant

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D of the Local Rules for the United States District Court for the Northern District of Georgia, I hereby certify that the foregoing has been prepared in Times New Roman, 14-point font, as permitted by Local Rule 5.1B

Respectfully submitted,

s/Thomas J. Munger
Georgia Bar No. 529609

MUNGER & STONE, LLP
999 Peachtree Street, NE
Suite 2850
Atlanta, Georgia 30309
Telephone: (404) 815-0829
Facsimile: (404) 815-4687
E-mail:  tom.munger@comcast.net

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PATRICIA BUCHANAN,

     Plaintiff,

vs.

DELTA AIRLINES, INC.,

     Defendant.

Civil Action No. 1:16-cv-04385-ODE-AJB

## CERTIFICATE OF SERVICE

This is to certify that I have this 3rd day of January, 2017 served the foregoing **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CAUSE OF ACTION** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to: John R. Olsen and Kenneth N. Winkler.

s/Thomas J. Munger
Georgia Bar No. 529609

26